UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN HALL,

                Plaintiff,

v.                                         Case No. 20-cv-1632-pp

LIEUTENANT STEFONEK,
CORRECTIONS OFFICER KURSZEWSKI,
CORRECTIONS OFFICER PIETRUSZKA,
CORRECTIONS OFFICER SIMMONS,
CORRECTIONS OFFICER BENSON,
CORRECTIONS OFFICER RUTH
and NURSE SKUCE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 8), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 12) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Stephen Hall, who is in custody at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motions for preliminary injunction and appointment of counsel, dkt nos. 8, 12, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case

1

without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his institution account. Id.

On November 24, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $34.50. Dkt. No. 6. The court received that fee on December 21, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff was a pretrial detainee confined at the Waukesha County Jail when he filed the complaint and the events he describes in the complaint occurred in that facility. Dkt. No. 1 at ¶3. The plaintiff says that the jail's records will indicate that he has been diagnosed with manic depression and "bipolar (2)," and he says that being in custody "dramatically" increases the likelihood that he will have panic attacks. Id. at ¶11. He alleges that on May 22, 2020 at about 1:00 a.m., he experienced what he believed was a panic attack and began pressing his intercom to alert the guards. Id. at ¶8. He asserts that jail policy says that the intercom should be used only for emergencies. Id. at ¶9. The plaintiff states that he pressed his intercom about thirty times, but that no one answered. Id. at ¶10. He says that he started to scream for help from other inmates, and that in an attempt to help the

3

plaintiff, some inmates began pressing their intercom buttons, but that no one responded. Id. The plaintiff alleges that he then pressed his intercom button about thirty more times before losing his stability and falling to the ground, unresponsive to other inmates. Id. at ¶12.

The plaintiff alleges that defendant Corrections Officer Ruth was responsible for answering the intercoms during the early morning hours of May 22, 2020. Id. at ¶13. The plaintiff states that defendant Corrections Officer Benson was responsible for conducting wellbeing checks of all incarcerated persons in the pod; he says that Benson "was observed walking up to" the plaintiff's cell door and said, "You can stop faking, and get off the floor now, I can see you breathing." Id. at ¶14. The plaintiff says that Benson received no response from him, and that Benson then allegedly slipped "what is believed to have been a disciplinary form" under the plaintiff's cell door and walked away. Id. The plaintiff says that other inmates in the plaintiff's unit then saw Benson conducting another wellbeing check; they began shouting at Benson to help the plaintiff, telling Benson that the plaintiff had not moved. Id. at ¶15. The plaintiff says that Benson, "now at [the plaintiff's] door stood there for a moment, then began knocking on his door, not getting a response, he then called a 'medical back-up.'" Id. at ¶16.

The plaintiff alleges that defendants Lieutenant Stefonek, Officer Kurszewski, Officer Pietruszka and Officer Simmons responded to the "medical back-up" call. Id. at ¶17. He alleges that they were observed laughing—he does not say by whom—for at least ten minutes outside of the plaintiff's cell door as he lay motionless in his cell. Id. The plaintiff states that his door was opened, and that "[n]o staff member from the medical was observed to be present at this time." Id. at ¶18. The plaintiff alleges that Kurszewski, Pietruszka and

4

Simmons "were observed to be in possession of foam body pads, which they left outside, before entering [his] cell." Id. at ¶19. The plaintiff says that when they entered his cell, the officers "began to suppress [the plaintiff's] movement who was still on the floor, by throwing their knees into his abdomen, which immediately caused [the plaintiff] to let out a scream due to the agonizing pain this caused him." Id. at ¶20. The plaintiff says that one of the officers sat on his legs and another kneeled into his shoulder, slamming his forearm into the plaintiff's throat, cutting off his air supply and ending the scream. Id. The plaintiff alleges that he then was handcuffed and taken to see the nurse (who was not on the unit). Id. at ¶21.

The plaintiff states that defendant Nurse Skuce arrived, and that while he was "still disoriented," he was able to tell her that he was in serious pain. Id. at ¶22. He alleges that Skuce ignored his complaint, took his blood pressure, said "he's fine" and then left. Id. According to the plaintiff, he was placed back in his cell to deal with the pain caused from the excessive force used on his while he lay unconscious, due to the head trauma caused by his anxiety attack. Id.

The plaintiff claims that the defendants violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs, using excessive force against him and showing deliberate indifference to his complaints of pain and failing to provide him medical treatment. Id. at ¶¶26-28. He seeks compensatory and punitive damages, as well as costs. Id. at ¶¶30-32.

  C. <u>Analysis</u>

A §1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth

5

Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda v. Cty. of Lake, 900 F.3d 335, 346-47 (7th Cir. 2018)). Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants acted purposefully, knowingly or recklessly when considering the consequences of their response to the medical condition at issue in the case. Id. (citing McCann v. Ogle Cty., Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id.

The plaintiff has stated sufficient facts to allow him to proceed on his deliberate indifference claim against Ruth based on his allegations that she did not respond to the plaintiff's emergency intercom calls; against Benson based on allegations that when he found the plaintiff lying unconscious in his cell, he accused the plaintiff of faking and walked away; and against Kurszewski, Pietruszka, Simmons and Stefonek based on allegations that they stood outside his cell laughing for about ten minutes while the plaintiff was lying unconscious in his cell. The plaintiff also has stated sufficient facts to allow him to proceed on a deficient medical care claim against Skuce, based on his allegations that Skuce denied him proper medical treatment for his pain.

The Fourteenth Amendment applies to excessive force claims brought by pre-conviction detainees and the standard is solely objective. Hardeman v. Curran, 933 F.3d 816, 822 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). "[A] pretrial detainee must show only that the

6

force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396-97.

The plaintiff has stated sufficient facts to allow him to proceed on an excessive force claim against Kurszewski, Pietruszka and Simmons based on his allegations that they physically abused him after they entered his cell when he was unconscious. The plaintiff also has stated sufficient facts to proceed on a claim against Stefonek for allegedly failing to intervene to prevent the other officers' excessive use of force.

### III. Plaintiff's Motion for Preliminary Injunction (Dkt. No. 8)

A little after a month after filing his complaint, the plaintiff filed a memorandum of law in which he complained of various issues at the Waukesha County Jail. Dkt. No. 8. For example, he asserted that at the jail he was confined to his cell for twenty-four hours a day, he was not allowed any time out of his cell to exercise, he was denied access to personal hygiene supplies, he was brutally beaten three times, he was denied medical care for his injuries, his request to conduct a religious fast was denied and nothing was done about his inability to use the law library. Id. at 1-4. The plaintiff states that, for all these reasons, he seeks a preliminary injunction. Id. at 4.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Fahenm-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer

7

irreparable harm without the injunction. Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012), citing Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 589-90 (7th Cir. 2012).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

First, the plaintiff is no longer in custody at the Waukesha County Jail— he was transferred to a state prison a little over four months after he filed this complaint and three months after he filed his memorandum of law. https://appsdoc.wi.gov/lop/detail.do (last visited September 7, 2021). Because the plaintiff no longer is in the facility where the events of which he complained were occurring, he cannot demonstrate that he will suffer irreparable harm if the court does not grant his request for preliminary injunctive relief. And generally, a prisoner's transfer from one prison to another moots claims for declaratory or injunctive relief against officials at the prior prison. See Ross v. Mebane, 536 F.2d 1199, 1202 (7th Cir. 1976) (affirming a district court's holding that "injunction restraining officials at Oxford from the future

8

imposition of certain forms of disciplinary action on the prisoner" was moot because the prisoner was transferred); Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996) (finding that transfer mooted claim for injunctive relief "against officials of the first prison"); Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003) (affirming District Court's decision that transfer from prison where inmate sought declaratory and injunctive relief concerning strip search practice mooted claim); Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004).

Even if the plaintiff still were in the Waukesha County Jail, to the extent the plaintiff was seeking injunctive relief unrelated to his deliberate indifference and excessive force claims, the court would have denied the motion because injunctive relief is appropriate only if it seeks relief from actions similar to the plaintiff's claims in the underlying case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Neuroscience, Inc. v. Forrest, No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec. 5, 2013).

The plaintiff's transfer from a county jail to a Wisconsin Department of Corrections institution, without suggestion of a return to the jail, renders moot his claim for injunctive relief.

## IV. Plaintiff's Motion to Appoint Counsel (Dkt. No. 12)

The same day that the court received the plaintiff's memorandum regarding injunctive relief, it also received from him a motion for appointment of counsel. Dkt. No. 12. The plaintiff says that he cannot afford a lawyer, pointing out that he asked to proceed without prepaying the filing fee. Dkt. No. 12 at 1. He says that his imprisonment will greatly limit his ability to litigate, the issues in this case are complex and will require significant research and investigation, he has limited access to the law library and he has limited legal knowledge. Id. The plaintiff also says that the trial likely will involve conflicting

9

testimony and that a lawyer would be better able to present evidence and cross-examine witnesses. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, ___ F.3d ___, 2021 WL 456002, at * 8 (7th Cir. Feb. 9, 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 2021 WL 456002, at *8. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate

10

Case 2:20-cv-01632-PP   Filed 09/08/21   Page 10 of 16   Document 19

those claims." Eagan, 2021 WL 456002 at *8. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied the first prong of the recruitment of counsel standard. Although he states that he has made repeated efforts to fine a lawyer, he has not provided the court with the names of those lawyers or explained how or when he tried to contact them or described their responses. Even if the plaintiff had made a reasonable attempt to find a lawyer on his own, the court would deny his motion at this time. The plaintiff's filings show that he is articulate and intelligent. His handwriting is neat and easy to read. He filed a detailed complaint as well as a motion for injunctive relief (accompanied by declarations of other inmates), he cites case law and he communicates frequently with the court in clear, understandable letters and notices. He has no trouble asking for things he wants. While the court notes that the most

11

recent letter it received from the plaintiff (sent from Waupun Correctional Institution and received by the clerk's office on June 17, 2021) appears to be in different handwriting than the submissions the court received while the plaintiff was at the Waukesha County Jail, this letter, too, is clear, articulate and easy to read.[1] Dkt. No. 18. The next step in the process is for the court to have the complaint served on the defendants and for the defendants to respond. Then the court will issue a scheduling order, setting deadlines for the parties to exchange discovery. The court included with its order screening the plaintiff's other case (Case No. 20-cv-1631), a guide with information about prosecuting the plaintiff's case which includes information on conducting discovery and pretrial motion practice. At this stage, the court believes that the plaintiff can manage the litigation himself. The court will deny without prejudice the plaintiff's motion to appoint counsel; if, later, it appears that the litigation has become too complex for the plaintiff to handle on his own, he may renew the request.

## V.  Plaintiff's Letter Requesting Documents (Dkt. No. 14)

On February 1, 2021, the court received from the plaintiff his notice of the change in his address from the Waukesha County Jail to Dodge Correctional Facility.[2] Dkt. No. 14. In this letter, the plaintiff also requested that the court send him a copy of an order to show case (which he filed in a

---

[1] This letter begins by stating, "In my last correspondence dated 06/06/21 . . . ." Dkt. No. 15. The court has not received in this case correspondence from the plaintiff dated June 6, 2021. The court *did* receive the plaintiff's change-of-address notice on February 1, 2021, dkt. no. 14, and the most recent letter (received by the clerk on June 17, 2021), asking how long it would take for the court to screen the plaintiff's cases and requesting certain forms, dkt. no. 15.
[2] The Department of Corrections Inmate Locator web site shows that the plaintiff has moved from Dodge to Waupun, but he did not notify the court of that fact.

12

different case) and his memorandum of law. Id. at 1. The plaintiff also for a "copy of the constitutional rights of prisoners." Id.

On June 17, 2021, the court received another letter from the plaintiff. Dkt. No. 18. In this letter, he asserted that he had written a letter on June 6, 2021 in which he had "brought up several issues, which were never even address in the response from" the clerk's office. Id. He said that he did not receive the majority of the documents that he'd requested. Id. He asked how long it would take for the court to rule on his various motions. Id. Finally, he asked for a sentence modification packet, an appeals practitioners' handbook, and the self-representation handbook. Id.

The clerk's office responded with a letter dated June 18, 2021, in which it notified the plaintiff that all documents he filed with the court needed to have a case number. Dkt. No. 18-1. The letter explained that if documents filed with the court do not contain a case number, they could be misfiled or not filed at all. Id. The clerk's office informed the plaintiff that it could not estimate when the case would be screened, and it explained that if he wanted proof that any documents had been filed, he needed to send an extra copy of that document and a self-addressed, stamped envelope. Id. As for copies of filed documents, the clerk's office informed the plaintiff that the copying fee is $0.10 per page. Id. Finally, the clerk's office advised the plaintiff that this federal court does not have any of the other packets or handbooks he requested. Id.

## VI. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for preliminary injunction. Dkt. No. 8.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 12.

The court will mail a copy of the complaint, the plaintiff's motion for preliminary injunction and three declarations, dkt. nos. 1 and 8-11 to the plaintiff along with this order.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Lieutenant Stefonek, CO Kurszewski, CO Pietruszka, CO Simmons, CO Benson, CO Ruth and Nurse Skuce under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee. The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the Warden of Waupun Correctional Institution or his designee must collect from his institution trust account the **$315.50** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or

federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

15

custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 8th day of September, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**